**United States District Court**
For the Northern District of California

1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6

7                FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10                                          No. C 06-07378 CW

11   PATRICIA A. MCCOLM,
                                            ORDER GRANTING
12          Plaintiff,                      DEFENDANTS' MOTION
                                            FOR SUMMARY JUDGMENT
13      v.                                  AND DENYING
                                            PLAINTIFF'S CROSS-
14   SAN FRANCISCO HOUSING AUTHORITY; SAN   MOTION FOR SUMMARY
     FRANCISCO HOUSING COMMISSION; GREG     JUDGMENT
15   FORTNER; TONY UCCIFERRI; PAULETTE
     BOYD; SHAWN COLEMAN; and DOES 1 to
16   100,

17          Defendants.
     _____/
18

19          In this lawsuit, Plaintiff Patricia McColm claims that

20   Defendants improperly terminated benefits she was receiving under

21   the Section 8 housing assistance program.  Defendants San Francisco

22   Housing Authority (SFHA), San Francisco Housing Commission; Greg

23   Fortner, Director of SFHA; Tony Ucciferri, Director of SFHA's

24   Section 8 housing program; Paulette Boyd, supervisor of inspectors

25   of the Section 8 housing program; and Shawn Coleman, inspector for

26   the Section 8 housing program, move for summary judgment on all of

27   Plaintiff's claims and also move for termination sanctions or, in

28   the alternative, evidentiary sanctions against Plaintiff.

United States District Court
For the Northern District of California

Plaintiff opposes the motions and cross-moves for summary judgment. The matters were heard on August 6, 2009.  Having considered the papers filed by the parties and oral argument on the motions, the Court grants Defendants' motion for summary judgment, denies Plaintiff's cross-motion for summary judgment and denies as moot Defendants' motion for termination sanctions.[1]

BACKGROUND

In June, 2002, Plaintiff began receiving housing assistance benefits through Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437, et seq., and on July 8, 2002, Plaintiff signed a lease with Khalid Anber, the private owner of a high rise condominium building located at 210 Harrison Street, San Francisco, California.  Previously, Plaintiff had resided in public housing owned and managed by SFHA.  She was transferred to the Section 8 program to accommodate her request for a wheelchair accessible unit.  See Curtis Ogilvie Declaration, Exs. 2 and 3.  In December, 2002, based on that previous tenancy, Plaintiff filed a lawsuit against SFHA and related defendants, McColm v. San Francisco House Authority, et al., C 02-5810 PJH, alleging, among other things, racial and disability discrimination, harassment and retaliation for complaints of disability discrimination.  On May 29, 2007, judgment was granted in favor of the defendants in that case.  See Order Granting Defendants' Motions for Summary Judgment and Motions to Dismiss (Doc. # 219 in Case No. C 02-5810 PJH).

---

[1]On August 28, 2009, Defendants filed an ex parte request to shorten time to hear their motion to dismiss (Docket # 232).  This request is denied as moot.  On August 31 and September 2, 2009, Plaintiff filed discovery motions (Docket ## 233, 235 and 238). These motions are denied as moot.

In this case, Plaintiff's First Supplemental Complaint (FSC) states the following causes of action against all Defendants: (1) retaliation under the Americans with Disability Act (ADA), 42 U.S.C. §§ 12101 - 12213, and the Fair Housing Act (FHA), 42 U.S.C. §§ 3601 et seq.; (2) violation of the California Public Records Act, California Government Code §§ 6250 et seq.; the California Information Practices Act, California Civil Code §§ 1798 et seq.; the San Francisco Sunshine Ordinance; and applicable Housing and Urban Development (HUD) and SFHA administrative regulations; (3) negligence; (4) intentional and negligent infliction of emotional distress; (5) civil conspiracy; and (6) violation of California Civil Code §§ 51-52.1 et seq.

Defendants present evidence that their termination of Plaintiff's Section 8 benefits was justified. They were required to make certain inspections of Plaintiff's apartment, and she did not allow them to make these inspections. Defendants also claim that Plaintiff harassed SFHA staff. At Plaintiff's request, Defendants held a hearing on the decision to terminate her Section 8 benefits. Immediately before the scheduled hearing, Plaintiff voluntarily removed herself from the program.

Plaintiff presents a myriad of documents, which are primarily copies of her letters and facsimiles to Defendants. The Court has reviewed these documents and has ascertained that the following appear to present facts that are relevant to this case. On September 8, 2002, Plaintiff sent a facsimile to Nadia Anber, agent for landlord Khalid Anber, notifying the landlord of problems such as: excessive heat in her apartment, an influx of water into her bedroom, faulty cable television, non-payment of an electric bill,

3

tenants smoking in the garden area and throwing cigarette butts into Plaintiff's outdoor area, dogs barking, doors loudly slamming, motorbikes without mufflers entering the building, constant noise in the common area, loud construction noise, and lack of sanitation and a health hazard caused by an influx of bugs and flying insects from patio area.  Pl's Dec. Ex. H.  On August 28, 2003, Plaintiff sent a facsimile to Nadia and Khalid Anber informing them of the following:  their notice of a plumber coming to make repairs was insufficient because it failed to provide the name, address and phone number of the plumber or the scope of work to be performed and failed to give her a specific date far enough in advance; defects needed attention, including an electrical short in a closet, insect infestation, noxious odors, and excessive heat; and there was continued smoking and noise in the common areas of the building.  Pl's Dec. Ex. G.

On July 15, 2003, Plaintiff sent a request to Mike Roetzer, SFHA Human Resources Director, for public information and her SFHA personal file and a list of documents relating to SFHA's dealings with other Section 8 participants.  Pl's Dec., Ex. N.

On September 27, 2004, Plaintiff sent a facsimile to C. Smith and M. Fong, employees of the Section 8 Program, objecting to the "apparent bad-faith failure to provide corrected computer form verification and failure to provide report form" regarding a failure to correct "the small retirement amount."  She also complained that Section 8 staff demanded that she sign the form even though it was incorrect.  Pl.'s Dec., Ex. L.  On January 30, 2005, Plaintiff sent a letter to Tony Ucciferri thanking him for meeting with and advising her, on January 28, 2005, that her 2004

re-certification was complete, her records had been corrected to reflect her small retirement amount, and the prior notice of intent to terminate benefits had been withdrawn.  Pl's Dec., Ex. N.

On August 25, 2005, Plaintiff sent Shawn Coleman a statement from her physician, George P. Fulmer, M.D., which indicated that the window covering Plaintiff installed in her living room was under his direction "as medically necessary to accommodate her needs as a person with disability."  Pl's Dec., Ex. Q.  On August 26, 2005, Plaintiff sent another facsimile to Ms. Coleman requesting that SFSA rescind its demand that Plaintiff remove the window covering because she sent a doctor's letter indicating that the window covering was needed as an accommodation for her disability.  She also informed Ms. Coleman that the ventilation unit in her bathroom was merely a switch fan unit which she chose not to use; repairs were needed to fix the running and noisy bathroom faucet, the electrical short from the closet to the sink, and water damage in the bedroom where mold was growing and contributing to her asthma; and noise was interfering with her safety and right to quiet enjoyment.  Pl.'s Dec., Ex. R.

On August 30, 2005, Plaintiff sent a letter to Robert M. Brilliant, attorney for the landlord, in which she stated that she wished to arrange an appointment for the fumigation of her unit on September 2, 2005 between 1:00 and 5:00 p.m.  Pl.'s Dec., Ex. S. On September 2, 2005, Plaintiff sent a letter to her landlord and Mr. Brilliant titled, "Waiting for Repairs on this Date," in which she stated that no contractor had contacted her for an appointment to fix the deficiencies in her apartment.  Pl.'s Dec., Ex. T.  On September 6, 2005, Plaintiff sent a facsimile to Ms. Coleman

United States District Court
For the Northern District of California

5

titled, "Stop Any Extension of Time to Correct Pest Problem!!!
Objection to Abuse by SFHA Failure to give Notice of Intent not to
Appear for Inspection as it Demanded this Date; and Objection to
any Extension of Time re Correction of Non-Disputed Defects;
Request for Immediate Appointment to Address Medical Issues."
Pl.'s Dec., Ex. V(1).

On September 19, 2005, Plaintiff sent a facsimile to Khalid
and Nadia Anber indicating that the plumber had arrived on
September 9, 2005 but did not have the necessary parts to complete
the repairs.  Also, the pest control company came on September 9,
2009 and sprayed her apartment and the pest situation was better,
but she received bites the next day indicating that the spraying
was not totally effective and no follow-up was scheduled.
Plaintiff also informed them that the wiring in the bathroom fan
was wrong, there was an electrical short in the bathroom and the
smoke detector was taken out due to inability to find a unit which
was not constantly beeping.  Pl's. Dec., Ex. X(1).  Also, on
September 19, 2005, Plaintiff sent a facsimile to Ms. Coleman,
apparently responding to correspondence she had received from Ms.
Coleman.  Plaintiff asked what alleged deficiency Ms. Coleman
contended "that I should take care of," and other questions
relating to how Plaintiff should take care of the perceived
deficiency.  Pl.'s Dec., Ex. X(2).

On September 29, 2005, Mr. Ucciferri sent a letter to
Plaintiff informing her of the following: that on August 2, 2005,
Ms. Coleman came to Plaintiff's unit to conduct the annual Housing
Quality Standards (HQS) inspection and several items failed to meet
HQS criteria; specifically, the kitchen and bathroom faucets were

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

leaking, the sliding door was blocked from opening, the smoke detector needed to be mounted, and a bug infestation needed extermination.  A re-inspection had been scheduled for September 6, 2005, but Plaintiff cancelled it.  A re-inspection took place on September 27, 2005, and SFHA was satisfied that most items had been resolved except for the blocking of the sliding patio door.  Mr. Ucciferri came to Plaintiff's building himself to inspect the structure that was obstructing the sliding door and concluded that it obstructed the secondary egress from the unit and was a safety hazard.  Mr. Ucciferri acknowledged that Plaintiff indicated that she had asthma and sought to block the door as an accommodation, but stated that an accommodation could not be granted which would circumvent a statute that required an unobstructed second form of egress from the property.  Mr. Ucciferri indicated that the barrier had to be removed immediately.  Pl.'s Dec., Ex. Y(1).  On October 12, 2005, Mr. Ucciferri sent Plaintiff a letter informing her that SFHA was rescinding its request that she remove the barrier because it had received assurances from the San Francisco Fire Department that the barrier would not pose a threat to Plaintiff's safety in the event of an emergency.  Pl.'s Dec., Ex. Y(2).

On October 20, 2005, Plaintiff wrote a letter to her landlord and his attorney titled, "Failure to Eradicate Pests and Complete Electrical Repair," in which she stated that, in spite of the spraying by a pest control agent and her own spraying and vacuuming, the pest problem had not been resolved.  She also advised that the fan installed in the bathroom had a problem hum and the electrician had not returned to correct the loose circuits. She thanked them for fixing the kitchen and bathroom faucets.

Pl.'s Dec., Ex. X(3).

On May 30, 2006, Plaintiff filed a complaint in state superior court against Defendants titled, "Claim for Personal Injuries," in which she alleged that Defendants caused her personal injury from a disease that she contracted because of the insects in her apartment that Defendants failed to exterminate or to cause her landlord to exterminate.  FSC, Ex. A(2).  She also alleged that she brought many defects in her apartment to Defendants' attention but, instead of addressing the issues, Defendants retaliated against her by complaining to city agencies, failing to take appropriate action and encouraging the landlord to increase the objectionable conditions to harass Plaintiff.

During SFHA's annual inspection of Plaintiff's apartment on June 15, 2006, the inspector noted certain deficiencies.  The SFHA issued a deficiency notice addressed to Plaintiff's landlord on June 20, 2006.  The notice indicated that the bathroom fan did not work, that Plaintiff requested that fleas and roaches be exterminated from her apartment and that Plaintiff must remove excessive clutter from the unit.  The notice stated that a re-inspection was scheduled for July 6, 2006.  Plaintiff interpreted the deficiency notice as retaliation for the May 30, 2006 claim she had filed against Defendants and objected to the report, especially to the conclusion that she had to remove clutter from her apartment.  She refused to allow a re-inspection.  On July 6, the re-inspection was re-scheduled for July 21, 2006.  On July 20, 2006, Plaintiff notified SFHA that the specified items were functioning properly, so there was no need for a further inspection.  On July 25, 2006, SFHA sent Plaintiff a final notice

of re-certification inspection which was scheduled for August 24, 2006.  The notice stated that Plaintiff's failure to keep the appointment could result in termination of her Section 8 housing benefits.  On July 28, 2006, Mr. Ucciferri sent Plaintiff a letter explaining her legal obligation to allow a re-inspection with reasonable notice.  In an August 23, 2006 letter to Mr. Ucciferri, Plaintiff chastised him for the "violent emotional explosion" in his July 28th letter and reiterated that everything in her apartment was working to her satisfaction so there was no need for a re-inspection.

On August 25, 2006, SFHA sent Plaintiff a "Notice of Proposed Decision to Terminate Section 8 Assistance" because Plaintiff had not allowed the SFHA representative to inspect her unit, in violation of 24 C.F.R. §§ 982.551(d) and 982.552(c)(i).  On September 19, 2006, a revised Notice of Proposed Decision to Terminate Section 8 Assistance was issued to charge that Plaintiff had made repeated abusive telephone calls to SFHA staff, in violation of 24 CFR § 982.552(c)(ix).  Plaintiff requested an informal hearing regarding the termination.  SFHA held this hearing on April 13, 2007, but, as noted above, Plaintiff voluntarily withdrew from the Section 8 program immediately before the hearing and did not attend the hearing.

At the hearing, an SFHA witness testified to the events described above surrounding the inspection, and attempts to re-inspect, Plaintiff's apartment.

Ms. Boyd, supervisor of Section 8 inspectors, also testified that, between September 6, and September 19, 2006, Plaintiff repeatedly contacted SFHA leaving lengthy abusive, rude and

accusatory voicemail messages for various SFHA staff.   The hearing officer concluded that there was sufficient evidence to support the SFHA's action to terminate Plaintiff from Section 8 participation based on violations of Section 8 participant obligations.

Defendants' evidence is generally in accord with Plaintiff's.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.   Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.   Therefore, the court must regard as true the opposing party's evidence, if it is supported by affidavits or other evidentiary material.   Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.   The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.   The substantive law will identify which facts are material.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an

United States District Court
For the Northern District of California

issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation.  Nissan, 210 F.3d at 1105.  If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists.  Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no

obligation to offer any evidence in support of its opposition.  Id.
This is true even though the non-moving party bears the ultimate
burden of persuasion at trial.  Id. at 1107.

Where the moving party bears the burden of proof on an issue
at trial, it must, in order to discharge its burden of showing that
no genuine issue of material fact remains, make a prima facie
showing in support of its position on that issue.  UA Local 343 v.
Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1994).  That
is, the moving party must present evidence that, if uncontroverted
at trial, would entitle it to prevail on that issue.  Id.  Once it
has done so, the non-moving party must set forth specific facts
controverting the moving party's prima facie case.  UA Local 343,
48 F.3d at 1471.  The non-moving party's "burden of contradicting
[the moving party's] evidence is not negligible."  Id.  This
standard does not change merely because resolution of the relevant
issue is "highly fact specific."  Id.

It is not the court's task to search the record for a genuine
issue of triable fact.  Keenan v. Allen, 91 F.3d 1275, 1279 (9th
Cir. 1996).  The non-moving party has the burden to identify with
reasonable particularity the evidence that precludes summary
judgment.  Id.  If the non-moving party fails to do so, the
district court may properly grant summary judgment in favor of the
moving party.  See Carmen v. San Francisco Unified Schl. Dist., 237
F.3d 1026, 1028-29 (9th Cir. 2001) (even if evidence in the court
file creates a genuine issue of material fact, a court may grant
summary judgment if the opposing papers do not include or refer to
that evidence).

United States District Court
For the Northern District of California

1                        EVIDENTIARY OBJECTIONS

2        Both parties object to various pieces of evidence submitted.

3   The Court has reviewed these evidentiary objections and has not

4   relied on any inadmissible evidence.  The Court will not discuss

5   each objection individually.  To the extent that the Court has

6   relied on evidence objected to by either party, such evidence has

7   been found admissible and the objections are overruled.[2]

8                             DISCUSSION

9        As a preliminary matter, the Court notes that Plaintiff's

10  brief in opposition to Defendants' motion for summary judgment and

11  in support of her cross-motion for summary judgment fails to

12  proffer legal argument in support of her claims or to specify the

13  evidence that supports her claims.  Instead, she disparages

14  Defendants' arguments, which she claims are based on fraud, and

15  objects to Defendants' evidence.  Based only upon Plaintiff's

16  failure to provide legal argument or to identify the evidence that

17  supports her claims, her cross-motion for summary judgment should

18  be denied and Defendants' motion granted.  See Carmen, 237 F.3d at

19  1029.  However, in the interest of justice, the Court will address

20  what appear to be Plaintiff's arguments from the allegations in the

21  FSC, her declaration and the documents she submits.

22  I. Retaliation Under the ADA and FHA

23       It appears from Plaintiff's FSC that she is alleging that she

24  engaged in the protected activities of seeking accommodations for

25  her disabilities and filing two civil rights complaints against

26  ────────────────

27       [2]In a separate motion, Defendants move for evidentiary
    sanctions against Plaintiff.  Because Defendants' motion for
28  summary judgment is granted, this motion is denied as moot.

                                13

United States District Court
For the Northern District of California

Defendants and because of these activities, Defendants retaliated against her by threatening to terminate her Section 8 benefits and by denying her good air quality, and pest and nuisance control in her apartment.

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA also prohibits discrimination against anyone who opposes any act or practice made unlawful by the ADA or because such individual made a charge or participated in an investigation, proceeding or hearing under the ADA. 42 U.S.C. § 12203(a). To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) he or she engaged in a protected activity; (2) he or she suffered an adverse action from the actions of the defendants; and (3) there was a causal link between the protected activity and the adverse action. Pardi v. Kaiser Found. Hosps., 389 F.3d 840, 849 (9th Cir. 2004). If the plaintiff can establish a prima facie case, the defendant must then offer legitimate reasons for the adverse action, whereupon the burden shifts back to the plaintiff to demonstrate a triable issue of fact as to whether such reasons are pretextual. Id.

The FHA prohibits discrimination in the rental or sale of housing, 42 U.S.C. § 3604, and makes it unlawful "to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected" by the FHA, 42 U.S.C. § 3617.

United States District Court
For the Northern District of California

To establish a prima facie case of retaliation under the FHA, a plaintiff must show the same three elements required to show retaliation under the ADA.  Walker v. City of Lakewood, 272 F.3d 1114, 1128 (9th Cir. 2001); Idaho Aids Foundation, Inc. v. Idaho Housing & Finance Ass'n, 422 F. Supp. 2d 1193, 1204 (D. Id. 2006).

Defendants argue that Plaintiff cannot establish a prima facie case of retaliation because she cannot show that she engaged in protected activity, that is, that she was seeking a legitimate accommodation for a disability, because she was granted all the accommodation requests that related to a disability.  Plaintiff disputes this and also argues that Defendants had no legitimate reason for terminating her benefits.

Defendants do not dispute that Plaintiff is disabled, although there is no evidence regarding the type of disability she has.  The evidence shows that Plaintiff complained to her landlord about such things as insects in her apartment, tenants making noise and smoking outside of her apartment, the bathroom fan not working correctly, and a need for other repairs.  She complained to the SFHA that it was not forcing the landlord to fix these problems.  These are normal problems tenants have with landlords, not requests for accommodations for a disability.  Therefore, the fact that Plaintiff made these requests to her landlord and asked the SFHA to ensure that her landlord made the repairs is insufficient to establish that Plaintiff engaged in protected activity under the ADA or FHA.

However, the 2002 and 2006 state lawsuits Plaintiff filed against Defendants constitute protected activity.  Nonetheless, she fails to present a prima facie retaliation case because she has not

United States District Court
For the Northern District of California

submitted evidence to establish that these lawsuits were the cause of any retaliation on Defendants' part.  In the 2006 lawsuit, Plaintiff alleged that Defendants were already retaliating against her, which means the alleged retaliation preceded the lawsuit.  In ¶ 29 of her declaration, Plaintiff states that the 2002 lawsuit was the cause of the retaliation.  However, in 2005, after the lawsuit was filed and was still pending, SFHA agreed to withdraw all prior notices to terminate Plaintiff from the Section 8 program, see Pl.'s Dec. § 26, and took other actions attempting to satisfy Plaintiff's requests.  This negates any inference that the 2002 lawsuit caused any adverse actions.  Thus, Plaintiff has failed to provide any evidence that an adverse action on the part of Defendants was motivated by her 2002 lawsuit.  Plaintiff's failure to show a causal link between any alleged protected activity and Defendants' adverse action means that she has not established a prima facie case of retaliation under the ADA and FHA.

Furthermore, Defendants have shown that the alleged retaliatory act, Plaintiff's termination from the Section 8 program, was warranted by her failure to allow inspections of her apartment and her abusive behavior toward SFHA staff.  Plaintiff's only argument that these reasons were pretextual is that Defendants' entire motion and the arguments contained therein are fraudulent.  This claim is not supported by evidence and, thus, Plaintiff has failed to raise a disputed issue of fact that Defendants' reasons for terminating her benefits were pretextual.

Defendants' motion for summary judgment on these claims is granted and Plaintiff's cross-motion for summary judgment is denied.

United States District Court
For the Northern District of California

II. Violation of Public Records Act and San Francisco Police Code

Plaintiff alleges that she sought records under the California Public Records Act, California Government Code § 6250; the California Information Practices Act, California Civil Code § 1798; the San Francisco Sunshine Ordinance; and HUD and SFHA regulations, all of which were ignored by Defendants.

The California Public Records Act requires that public records of a state and local agency be open to inspection by the public during that agency's office hours, except as provided in the Act. Cal. Gov't Code § 6253(a). Court costs and attorneys' fees shall be provided to any plaintiff who prevails in litigation filed pursuant to the Act. Cal. Gov't Code § 6259(d). A plaintiff prevails if the action results in the defendant releasing a copy of a previously withheld document. Rogers v. Superior Court, 19 Cal. App. 4th 469, 482 (1993). Documents exempt from disclosure are listed in Government Code § 6254. Section 6254(b) provides that records pertaining to pending litigation to which the public agency is a party is exempt from disclosure until the pending litigation or claim has been finally adjudicated.

Plaintiff does not indicate specifically which documents she requested were never provided to her. In ¶ 28 of her declaration, Plaintiff refers to Exhibit O as one of her several requests for public records. This is a list of seventeen items that she requested SFHA send to her. The list includes items pertaining to Plaintiff's Section 8 file, SFHA regulations, items relating to SFHA employees, and personal information about others whose Section 8 housing benefits were terminated. Documents containing the personal information of others would not be available to her

17

because they are confidential.  From Plaintiff's submissions, it is apparent that she received some of the information she requested because she indicates that Exhibit O was obtained from her Section 8 file as produced in 2005, <u>see</u> Pl.'s Dec. ¶ 28, and she attaches SFHA regulations in Exhibits AA and BB.  Because Plaintiff has not cited evidence to raise a triable issue of material fact, summary judgment is granted to Defendants on this claim and Plaintiff's cross motion is denied.

Plaintiff also alleges that Defendants violated the California Information Practices Act.  This act provides that no agency may disclose personal information in a manner that would link the information to the individual to whom it pertains.  Cal. Civ. Code § 1798.24.  Plaintiff does not allege that Defendants disclosed personal information about her in a prohibited manner.  Therefore, summary judgment for Defendants is granted on this claim and denied to Plaintiff.

Plaintiff also claims that Defendants violated San Francisco's Sunshine Ordinance.  Plaintiff does not identify the section of the Administrative Code under which she brings this claim, but Defendants identify it as Section 67 of the San Francisco Administrative Code.  Section 67.35(a) of the Administrative Code provides that any person may seek injunctive relief, declaratory relief or a writ of mandate to enforce his or her right to inspect or to receive a copy of any public record "under this Ordinance" or to enforce his or her right to attend any meeting required "under this Ordinance" to be open to the public.  Section 67.35(b) provides that costs and reasonable attorneys' fees shall be awarded to the plaintiff who prevails in such an enforcement action.

United States District Court
For the Northern District of California

Defendants argue that Plaintiff was not denied access to any proceeding to which she was a party. They indicate that the original date for the hearing on the termination of Plaintiff's Section 8 benefits was scheduled for March 2, 2007, but it was re-scheduled at Plaintiff's request and that she did not attend the re-scheduled hearing. Plaintiff does not dispute Defendants' argument nor does she allege that she was denied access to any other government proceedings. Plaintiff does not address which public records "under this Ordinance" she requested but did not receive. Therefore, Plaintiff has failed to raise a triable issue of material fact on this claim and summary judgment is granted to Defendants and denied to Plaintiff.

Plaintiff claims that Defendants violated the San Francisco Police Code which she alleges prohibits discrimination and retaliation against residents of San Francisco. <u>See</u> San Francisco Police Code §§ 3301 <u>et seq.</u> (prohibiting discrimination based on disability in City and County of San Francisco). However, Plaintiff does not allege discrimination in her complaint, nor has she presented evidence that Defendants discriminated or retaliated against her. Therefore, summary judgment on this claim is granted to Defendants and denied to Plaintiff.

Plaintiff alleges that Defendants violated applicable HUD and SFHA Administrative Plan Regulations. Plaintiff's FSC does not specify which HUD regulations Defendants violated. In her declaration, Plaintiff states that SFHA violated Appendix D of the SFHA Administrative Plan, Pl.'s Ex. BB, and in her supplemental declaration, Plaintiff attaches fifteen pages of "relevant sections of the San Francisco Housing Authority Administrative Plan; that

verify the violation of SFHA of its own policy and procedures."

In their reply, Defendants argue that Appendix D does not apply to the April 13, 2007 hearing on the termination of Plaintiff's Section 8 benefits; rather, it applies to grievances by program participants. Appendix D is titled "Resident Grievance Procedures" and concerns requirements for hearings regarding grievances that are initiated by the resident and for hearings held about eviction or termination of residency.

Addressing the fifteen pages of the SFHA Administrative Plan Plaintiff submits, Defendants argue that SFHA did not violate its own regulations or procedures. Paragraph 12.0 of the Administrative Plan provides:

> The SFHA will inspect all units to ensure that they meet Housing Quality Standards (HQS). . . . The SFHA must be allowed to inspect the dwelling unit at reasonable times with reasonable notice. The family and owner will be notified of the inspection appointment by first class mail. If the family can not be at home for the scheduled inspection appointment, the family must call and reschedule . . . or make arrangements to enable the Housing Authority to enter the unit and complete the inspection. If the family misses the scheduled inspection and fails to reschedule the inspection, the SFHA will only schedule one more inspection. If the family misses two inspections, the SFHA will consider the family to have violated a Family Obligation and their assistance will be terminated.

Paragraph 12.1B provides that an annual inspection will be conducted to determine that the unit continues to meet HQS. Paragraph 12.4B provides that the owner or the tenant of the unit will be given time to correct the items cited on the inspection report that fail HQS. Deficiencies that endanger the tenant's health or safety must be corrected within twenty-four hours and less serious violations must be corrected within thirty days. Paragraph 12.4B provides, "If the participant fails to correct the

20

HQS failed items that are family-caused after proper notification has been given, the SFHA will terminate assistance for the family . . .”

In this case, SFHA conducted its annual inspection of Plaintiff's apartment and found some items that needed correction. However, when it attempted to set up a re-inspection of Plaintiff's apartment to ensure that the repairs had been made, Plaintiff would not allow the re-inspection. See Ucciferri Dec., Ex. A, July 28, 2006 Ucciferri letter to Plaintiff. On August 25, 2006, SFHA terminated Plaintiff from the Section 8 program only after proper notice of her duties and responsibilities as a beneficiary of the program and the consequences of her failure to meet those responsibilities. Plaintiff requested an informal hearing to object to her termination and, in accordance with SFHA procedures, a hearing was scheduled. Plaintiff withdrew from the Section 8 program the day before the scheduled hearing and did not attend it. SFHA acted in compliance with its regulations and procedures.

III. Negligence

Plaintiff alleges that Defendants owed her, as a Section 8 Program participant, a duty to comply with the ADA, FHA, HUD regulations, SFHA regulations and the San Francisco Police Code not to retaliate against her and to provide her housing that met all statutory requirements for safety and habitability. Plaintiff alleges that Ms. Coleman and Ms. Boyd violated their duty to require abatement of the pest infestation in her apartment and all Defendants allowed the landlord to avoid abatement of the problems with pests, noise, air quality, criminal threats and other "discriminatory" conditions. It appears that Plaintiff is alleging

United States District Court
For the Northern District of California

claims for negligence per se and negligence.

"To state a cause of action under the negligence per se doctrine, the plaintiff must plead four elements: (1) the defendant violated a statute or regulation, (2) the violation caused the plaintiff's injury, (3) the injury resulted from the kind of occurrence the statute or regulation was designed to prevent, and (4) the plaintiff was a member of the class of persons the statute or regulation was intended to protect." Alejo v. City of Alhambra, 75 Cal. App. 4th 1180, 1184-85 (2000).

As discussed above, Plaintiff has failed to present evidence that Defendants violated any statute or regulation.  Therefore, her claim for negligence per se fails.  Summary judgment is granted to Defendants and denied to Plaintiff on this claim.

In California, the prima facie elements of negligence are a legal duty to use due care; a breach of such legal duty; and proximate or legal causation of the resulting injury.  United States Liab. Ins. Co. v. Haidinger-Hayes, Inc., 1 Cal. 3d 586, 594 (1970).

Defendants argue that Plaintiff does not present evidence that she has sustained injuries or damages having any causal nexus with any conduct by SFHA or its employees.  The only injuries which Plaintiff could claim she sustained as result of the conditions in her apartment are the bites and irritation that might have been caused by an insect infestation in the apartment.  However, the evidence shows that Defendants notified Plaintiff's landlord of this problem and the landlord made several attempts to remedy it. On August 2, 2005, SFHA notified Plaintiff's landlord of the pest infestation, see Ogilvie Dec., Ex. E, the landlord corresponded

United States District Court

For the Northern District of California

with Plaintiff several times in an attempt to send an exterminator to Plaintiff's apartment, but Plaintiff did not reply to this correspondence, see Ogilvie Dec., Exs. F, G and H.  On September 9, 2005, the landlord successfully sent a pest control company to spray Plaintiff's apartment and she acknowledged that the spraying remedied the situation to some degree.  See Pl.'s Dec. Ex. X(1). Apparently, Plaintiff feels SFHA should have caused the landlord to send the pest control company again.  However, there is no evidence that Defendants breached any duty or caused any injuries sustained by Plaintiff.  Therefore, Defendants' motion for summary judgment is granted on this claim and Plaintiff's cross-motion is denied.

IV. Intentional and Negligent Infliction of Emotional Distress

Plaintiff alleges that Defendants' failure to protect her from a pest infestation in her apartment was intentional, malicious, discriminatory, retaliatory, and done for the purpose of causing her to suffer humiliation, mental anguish, emotional and physical distress.

In order to establish a defendant's liability for intentional infliction of emotional distress, a plaintiff must show (1) outrageous conduct by the defendant, (2) an intention to cause, or a reckless disregard of the probability of causing, emotional distress; (3) severe emotional distress; and (4) actual and proximate causation of the emotional distress.  Agarwal v. Johnson, 25 Cal. 3d 932, 946 (1979), overruled on other grounds in White v. Ultrimar, 21 Cal. 4th 563, 574 (1999); Heller v. Pillsbury, Madison & Sutro, 50 Cal. App. 4th 1367, 1388 (1996).  Defendants argue that Plaintiff fails to show that they engaged in outrageous conduct. To be outrageous, the conduct must be so extreme as to "exceed all

**United States District Court**
For the Northern District of California

bounds of that usually tolerated in a civilized society." <u>King v. AC&R Adver.</u>, 65 F.3d 764, 770 (9th Cir. 1995) (applying California law) (internal quotation marks omitted).  "Summary judgment is proper if a claim cannot reasonably be regarded as so extreme and outrageous as to permit recovery." <u>Id.</u> (internal quotation marks omitted).

Defendants' conduct of which Plaintiff complains constitutes routine administrative actions taken in accordance with SFHA regulations.  Defendants notified the landlord of Plaintiff's complaints regarding pests in her apartment.  Defendants' requests for inspections of Plaintiff's apartment was in keeping with SFHA regulations.  Defendants' actions are not the type of outrageous conduct that is necessary to establish a claim for intentional infliction of emotional distress.  Therefore, summary judgment is granted in favor of Defendants on this claim and Plaintiff's cross-motion for summary judgment is denied.

Under California law, negligent infliction of emotional distress is not an independent tort, but a version of the tort of negligence. <u>Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.</u>, 48 Cal. 3d 583, 588 (1989).  The traditional elements of duty, breach, actual causation, proximate causation, and damages apply. <u>Id.</u>  As discussed above, Plaintiff fails to show that Defendants breached a duty of care or that any action on Defendants' part proximately caused her emotional distress.  Therefore, Defendants' motion for summary judgment on this claim is granted and Plaintiff's cross-motion for summary judgment is denied.

V. Civil Conspiracy

United States District Court
For the Northern District of California

Plaintiff alleges that Defendants entered into an agreement to eliminate her Section 8 benefits by harassing her in retaliation for filing the 2002 lawsuit against them.

Civil conspiracy is not a separate cause of action, but a way to impose liability upon a defendant who did not commit a tort himself or herself but who shared with the immediate tortfeasor a common plan to harm the plaintiff. Applied Equipment v. Litton Saudi Arabia, 7 Cal. 4th 503, 510-11 (1994). To support a claim of conspiracy under state law, a plaintiff must allege that two or more people intentionally entered into an agreement with the intent to commit a wrongful act. Wyatt v. Union Mortg. Co., 24 Cal. 3d 773, 784-85 (1979). The essence of a conspiracy claim is the tort committed by the co-conspirators, not the agreement to do it. Applied Equipment, 7 Cal. 4th at 510-11. To engender liability, the underlying tort must have been committed. Id. at 511.

Plaintiff appears to base her conspiracy claim on retaliation. However, as previously discussed, Plaintiff has not presented evidence that Defendants retaliated against her; nor does she present evidence that they agreed to do so. Therefore, her conspiracy claim fails. Defendants' motion for summary judgment on this claim is granted and Plaintiff's cross-motion for summary judgment is denied.

VI. California Civil Code §§ 51-52.1 et seq.

Plaintiff alleges that Defendants retaliated and discriminated against her, and thus interfered with the exercise of her civil rights, and threatened, intimidated and coerced her in violation of California Civil Code §§ 51 through 52.1.

California's Unruh Act, California Civil Code § 51 et seq.,

25

United States District Court
For the Northern District of California

provides in pertinent part:

> All persons within the jurisdiction of this state are
> free and equal, and no matter what their sex, race,
> color, religion, ancestry, national origin, disability,
> or medical condition are entitled to the full and equal
> accommodations, advantages, facilities, privileges, or
> services in all business establishments of every kind
> whatsoever.

Cal. Civ. Code § 51.

In general terms, the Unruh Act "secures equal access to public accommodations and prohibits discrimination by business establishments." Black v. Dep't of Mental Health, 83 Cal. App. 4th 739, 745 (2000) (internal citations omitted). The objective of the Unruh Act is to prohibit businesses from engaging in unreasonable or arbitrary discrimination. Cohn v. Corinthian Colleges, Inc., 169 Cal. App. 4th 523, 527 (2008). Intent is an element of a claim under the Unruh Act. Id. at n.3 (citing Harris v. Capital Growth Investors XIV, 52 Cal. 3d 1142, 1149 (1991)). The term, "business establishment," within the Act, means "everything about which one can be employed, and it is often synonymous with 'calling, occupation, or trade, engaged in for the purpose of making a livelihood or gain.'" O'Connor v. Village Green Owners Assocs., 33 Cal. 3d 790, 795 (1983). Plaintiff provides no authority for the proposition that SFHA is a business establishment within the meaning of the Unruh Act. According to the O'Connor test, SFHA and its staff do not qualify as a business because they are not engaged in a calling, occupation or trade for purposes of making a livelihood or gain. Rather, they administer governmental housing programs to qualified participants. See Taorimina v. Calif. Dep't of Corrections, 946 F. Supp. 829, 833 (S.D. Cal. 1996) (prison does not qualify as a business under Unruh Act because prisoners not

26

engaged in a calling, occupation or trade for purposes of making a livelihood; they are incarcerated because of crimes committed). Furthermore, as discussed above, Plaintiff has failed to present evidence that Defendants intentionally, or otherwise, discriminated against her.

Summary judgment is granted in favor of Defendants on this claim and Plaintiff's cross-motion for summary judgment is denied.

CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment (Docket # 184) and denies Plaintiff's cross motion for summary judgment (Docket # 211).  Defendants' motion for evidentiary and terminating sanctions (Docket # 201) and ex parte request to shorten time to hear their motion to dismiss (Docket # 232) are denied as moot.  Plaintiff's newly filed discovery motions (Docket ## 233, 235 and 238) are denied as moot.  Judgment shall enter in favor of Defendants.  Each party shall bear its own costs of litigation.


IT IS SO ORDERED.

Dated: 9/4/09

_____
CLAUDIA WILKEN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

PATRICIA A MCCOLM,

        Plaintiff,

  v.

SAN FRANCISCO HOUSING et al,

        Defendant.
_____/

Case Number: CV06-07378 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 4, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Patricia A. McColm
P.O. Box 27274
San Francisco,  CA 94127

Dated: September 4, 2009

Richard W. Wieking, Clerk
By: Sheilah Cahill, Deputy Clerk

**United States District Court**
For the Northern District of California

28